Case No. 17-cv-00773-BLF

**(1) GRANTING FIRST FINANCIAL'S MOTION TO DISMISS DEFENDANTS' FIRST COUNTERCLAIM WITHOUT LEAVE TO AMEND;**

**(2) GRANTING FIRST FINANCIAL'S MOTION TO DISMISS DEFENDANTS' SECOND COUNTERCLAIM WITH LEAVE TO AMEND;**

**(3) GRANTING WITH LEAVE TO AMEND IN PART, WITHOUT LEAVE TO AMEND IN PART, AND DENYING IN PART FIRST FINANCIAL'S MOTION TO STRIKE**

[Re: ECF 67]

FIRST FINANCIAL SECURITY, INC.,

Plaintiff,

v.

MICHAEL W JONES, et al.,

Defendants.

Presently before the Court is Plaintiff First Financial Security, Inc.'s ("First Financial") motion to dismiss Defendants Michael W. Jones ("Jones"), Insurance Distribution Consulting, LLC ("IDC"), and Supreme Alliance, LLC's ("Supreme Alliance") (collectively, "Defendants") amended counterclaims, as well as First Financial's motion to strike portions of Defendants' Answer and all ten of their affirmative defenses. *See* Mot., ECF 67. Defendants assert two counterclaims against First Financial for (1) declaratory judgment; and (2) violation of California Business & Professions Code §§ 17200 et seq. *See* Answer and Amended Counterclaims ("Answer"), ECF 66 at 14-17. First Financial moves to dismiss both counterclaims for lack of standing, and also moves to strike all of Defendants' affirmative defenses and portions of their Answer on the grounds that they fail to provide fair notice of defenses, some defenses are not actually defenses, and other allegations are immaterial and impertinent to the action. *See generally* Mot.

The Court vacated the hearing on First Financial's motion to dismiss and motion to strike pursuant to Civil Local Rule 7-1(b). *See* ECF 70. For the reasons that follow, First Financial's motion to dismiss the First Counterclaim is GRANTED WITHOUT LEAVE TO AMEND. First Financial's motion to dismiss the Second Counterclaim is GRANTED WITH LEAVE TO AMEND. First Financial's motion to strike is GRANTED WITH LEAVE TO AMEND IN PART, WITHOUT LEAVE TO AMEND IN PART, AND DENIED IN PART.

## I.     BACKGROUND

### A.     The Instant Action

First Financial is a life insurance brokerage agency that brings this lawsuit against Defendants for their roles in allegedly orchestrating a mass resignation of approximately 1,400 licensed insurance sales contractors who left to work for First Financial's competitor, non-party Freedom Equity Group ("FEG"), beginning on May 10, 2014 and continuing for approximately two weeks. *See* Compl. ¶¶ 55-62, ECF 1. At all relevant times, Defendant Michael Jones was an actuary in the insurance industry who developed and sold life insurance products to insurance brokerage companies. *Id.* ¶ 34. Jones performed his actuarial services through his consulting firm, IDC. *Id.* ¶ 35. Jones is also the indirect owner of Supreme Alliance, which engages in the development and sale of life insurance products. *Id.* ¶ 37. The Complaint alleges, and Defendants admit, that First Financial's competitor FEG—whom all of the sales contractors left First Financial to go work for—was a primary client of Jones or his entities. *Id.* ¶ 41; Answer ¶ 13.

The instant dispute requires the Court to examine an agreement entered into between First Financial and each of its former sales contractors. In order to work within First Financial's sales network, each sales contractor was required to enter into the Sales Contractor Agreement and Terms and Conditions. *See* Compl. ¶ 17; Answer ¶ 79; Compl. Ex. A. (the "Agreement"), ECF 1-1. The Agreement contained an anti-raiding covenant in Section C.3.i whereby each sales contractor covenants that he or she "will not, at any time during the term of this Agreement, and for a period of two (2) years thereafter, directly or indirectly: i) induce or attempt to induce any person who is contractually affiliated with FFS as a Sales Contractor or in other capacity, or any

member of FFS's administrative staff, to terminate their relationship with FFS." *See* Agreement at 3-4 ("Anti-Raiding Covenant").

After an unsuccessful motion to dismiss the Complaint, *see* ECF 43, Defendants filed an Answer and Counterclaim against First Financial. *See* ECF 53. After First Financial moved to dismiss the Counterclaim, Defendants filed an Answer and Amended Counterclaims on October 10, 2017, which became the operative pleading. *See* Answer, ECF 66. First Financial now moves to dismiss the amended counterclaims and to strike portions of the Answer, including all ten affirmative defenses. See ECF 67.

Defendants allege two counterclaims against First Financial. First, Defendants seek a declaratory judgment that the anti-raiding provision of the Agreement is invalid under California law. Second, Defendants assert a claim against First Financial for unfair competition in violation of California Business & Professions Code §§ 17200 *et seq. See* Answer at 14-17. Both of the counterclaims appear to be based on Defendants' contentions that the anti-raiding provision in the Agreement is invalid. This exact anti-raiding provision has already been the subject of an ongoing and separate class action proceeding in the Central District of California: *Do, et al. v. First Financial Security, Inc*., No. 2:14-cv-7608-SVW (C.D. California) (the "*Do* Action").

### B.    The Related *Do* Action

The *Do* Action involves the same mass exodus of sales contractors who left First Financial to join its competitor, FEG. In *Do*, the former sales contractors brought a class action against First Financial alleging that First Financial withheld rightfully owed commissions from them after the sales contractors resigned sometime after May 10, 2014. *See* Declaration of Clifford Davidson ("Davidson Decl.") ECF 67-1, Exh. A (the "*Do* Order") ECF 67-2. The *Do* plaintiffs further alleged that First Financial sent them harassing letters and submitted derogatory credit listings called "vectors" against them. *Id*. at 1-2. The former sales contractors brought claims against First Financial for breach of contract for the nonpayment of their commissions, and for unfair competition arising from the contractual restraints in the Agreement.

In their complaint, the *Do* plaintiffs alleged that the very same anti-raiding provision at issue here violates California Business & Professions Code § 16600 and therefore is also unlawful

under § 17200. *See Do* Order at 2. First Financial filed a counterclaim in the *Do* Action seeking a declaratory judgment that the anti-raiding provision was not invalid under § 16600, and moved for summary judgment on its counterclaim for declaratory relief and for partial summary judgment on the *Do* plaintiffs' claims for violations of §§ 16600 and 17200. *Id.*; *see also* Mot. at 3.

On August 23, 2017, Judge Stephen V. Wilson of the District Court for the Central District of California granted summary judgment in favor of First Financial, holding that the anti-raiding provision does not violate § 16600 and thus could not form the basis of the *Do* plaintiffs' claims. *Do* Order at 3-5.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) raises a challenge to the Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Article III...gives the federal courts jurisdiction over only cases and controversies." *Public Lands for the People, Inc. v. United States Dep't of Agric.*, 697 F.3d 1192, 1195 (9th Cir. 2012) (internal quotation marks and citation omitted). "The oft-cited *Lujan v. Defenders of Wildlife* case states the three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Id.* at 1195-96 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If these requirements are not satisfied, the action should be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the [counterclaim] and must construe the [counterclaim] in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court also may consider affidavits containing further particularized allegations of fact supportive of Article III standing. *Id.* at 1067. "At the pleading stage, general factual allegations of injury resulting from the [counter defendant's] conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 1068

4

(internal quotation marks, citation, and brackets omitted). "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether [counter-claimant] states a claim under 12(b)(6), the court necessarily assesses the merits of [counter-claimant's] case." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "But the threshold question of whether [counter-claimant] has standing (and the court has jurisdiction) is distinct from the merits of his claim." *Id.* "This is not to say that [counter-claimant] may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how [counter-defendant's] actions caused his injury." *Id.* (internal quotation marks and citation omitted). But "the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Id.* (internal quotation marks, citation, and brackets omitted).

### B.     Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### C.     Rule 12(f)

Federal Rule of Civil Procedure 8(b) demands that a party "state in short and plain terms its defenses to each claim asserted against it. Fed. R. Civ. P. 8(b)(1). Rule 12(f) governs motions to strike defenses, and permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Defenses can be stricken when they fail to give a plaintiff "fair notice" of the defense asserted. *See, e.g., Wyshak v. City Nat'l Bank,* 607 F.2d 824, 827 (9th Cir. 1979).  Courts in this district apply the heightened pleading standards of *Twombly* and *Iqbal* to affirmative defenses when adjudicating a motion to strike. *See, e.g., Barnes v. AT & T Pension Benefit Plan–Nonbargained Program,* 718 F.Supp.2d 1167, 1172 (N.D. Cal. 2010); *see also Perez v. Gordon & Wong Law Grp., P.C.*, 2010 WL 1029425, at *7–8 (N.D. Cal. Mar. 26, 2012) (collecting cases within this district, and stating that "the vast majority of federal district courts presented with [this] issue have reached the same conclusion"). "While a defense need not include extensive factual allegations in order to give fair notice, bare statements reciting mere legal conclusions may not be sufficient." *Id.* at * 8 (citing *Scott v. Fed. Bond & Collection Servs., Inc.,* 2011 WL 176846, at *4 (N.D. Cal. Jan. 19, 2011)).

"While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan–Nonbargained Program,* 718 F.Supp.2d 1167, 1170 (N.D.Cal.2010).  The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States,* 226 F.3d 996, 1000 (9th Cir.2000).  When striking an affirmative defense, leave to amend should be freely given so long as it causes no prejudice to the moving party. *See, e.g., Wyshak,* 607 F.2d 824, 826.

## III.    DISCUSSION

### A.     Motion to Dismiss Defendants' Counterclaims

#### 1.      First Counterclaim for Declaratory Judgment

In their First Counterclaim, Defendants seek a declaratory judgment that the anti-raiding provision of the Agreement is invalid under California Business & Professions Code § 16600. *See*

Answer ¶¶ 49-51, 81, 91. Defendants allege that they had "relationships and dealings" with members of First Financial's sales force, and that those sales contractors entered into the Agreement containing the anti-raiding covenant with First Financial. *Id.* ¶¶ 78-80. Defendants further allege that "[h]undreds, if not thousands" of First Financial sales contractors wanted to or still want to leave First Financial and join FEG, but they are unable to in the face of the threat that First Financial will withhold their duly earned commissions and residuals if the contractors refuse to honor the anti-raiding provision and leave First Financial. *Id.* ¶¶ 86-87. Defendants assert that these allegedly wrongful actions by First Financial have damaged Defendants "[t]hrough their relationship with FEG." *Id.* ¶ 88.

### a. Standing

First Financial moves to dismiss the First Counterclaim on the grounds that Defendants' allegations are insufficient to establish that Defendants have standing to seek a declaratory judgment. *See* Mot at 5. Although the First Counterclaim does not cite to any statutory authority on which Defendants' base their request for a declaratory judgment, First Financial "presumes that Counterclaimants rely on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a)." *See* Mot at 5 n.2. Defendants do not contest that § 2201(a)'s "actual controversy" requirement applies, or that its requirement is coterminous with Article III's "actual cases or controversies" standard. *See* Opp'n at 4, ECF 69. Rather, Defendants argue that their First Counterclaim complies with Article III's standing requirements because the anti-raiding provision creates a "substantial controversy" between First Financial and Defendants, even though Defendants concede they are not parties to the Agreement. *Id.*

In order to satisfy Article III's "cases and controversies" requirement, a dispute between parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations and quotations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Absent a true case or controversy, Defendants' counterclaim for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1). *See Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007); *see also Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp.,* 471 F.3d 1100, 1103–04 (9th Cir. 2006) (holding that a true "case or controversy" is required to withstand a Rule 12(b)(1) motion for lack of jurisdiction in an action for declaratory relief).  Defendants must also satisfy three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to First Financial's challenged conduct and (3) has some likelihood of redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61.

First Financial's primary argument is that the validity of the anti-raiding provision does not create a substantial controversy because Defendants are not parties to the Agreement, which was only entered into between First Financial and its sales contractors. *See* Mot. at 6.  Thus, First Financial argues that Defendants fail to allege an adverse legal interest that would permit the Court to issue declaratory relief to protect that legal interest. *Id.* at 6-7.  Defendants, in a highly conclusory fashion, argue that "it is absurd to assert" that they are not affected by the Agreement between First Financial and its contractors because there "is clearly a controversy." *See* Opp'n at 5.  Defendants attempt to explain their theory that Article III's requirements are satisfied because many other sales contractors would have left First Financial to join "their mentors" at FEG, but cannot take the chance of leaving, which somehow results in harm to Defendants. *Id.*

The Court finds that Defendants lack standing to pursue a declaratory judgment in this case because they have not alleged that they and First Financial have "adverse legal interests" with respect to the anti-raiding provision.  Defendants focus only on the damage that they will suffer from the "hundreds" of First Financial sales contractors that have been prevented from leaving First Financial and joining FEG due to the anti-raiding provision.  But the Ninth Circuit is abundantly clear that even suffering "substantial economic effects" does not alone create a justiciable case or controversy. *See Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.,*

8

771 F.3d 632, 637 (9th Cir. 2014). Moreover, Defendants' disagreement with First Financial regarding the legality of the anti-raiding provision is also not an adverse legal interest. "It is axiomatic that differing views of the law are not enough to satisfy Article III." *Id.* (citing *Hollingsworth v. Perry,* 133 S.Ct. 2652, 2661 (2013) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.")).

The Ninth Circuit's guidance in *Shell* speaks directly to Defendants here. In that case, petroleum companies including Shell brought an action against environmental organizations seeking a declaratory judgment that the Bureau of Safety and Environmental Enforcement's approval of their oil spill response plans did not violate the Administrative Procedure Act ("APA"). 771 F.3d at 634. The district court originally denied the environmental organizations' motion to dismiss Shell's complaint for lack of standing, but the Ninth Circuit reversed and held that Shell did not satisfy Article III or the Declaratory Judgment Act's "case or controversy" requirement. *Id.* at 638. The Ninth Circuit explained that Shell did not have an adverse *legal* interest in the environmental organizations' APA challenge to the Bureau's approval. *Id.* at 637. The Ninth Circuit further rejected Shell's argument that an adverse legal interest is present merely because the parties "have opposing legal positions" regarding the lawfulness of the Bureau's approval. *Id.* at 635-36. Similarly, Defendants here rely on their dispute with First Financial regarding the legal validity of the anti-raiding provision. *Compare* Answer ¶ 81 *with* ¶ 89.

"A party's legal interest must relate to an actual claim arising under federal law that another asserts *against him.*" *Shell*, 771 F.3d at 637. It is the sales contractors, not Defendants, who have legal obligations and could be sued under the anti-raiding provision. As the Ninth Circuit explained, "it would be odd to conclude that a case or controversy exists merely because [Defendants] seek[] to know who would prevail if [First Financial] asserted [a] claim against the [sales contractors]." *Id.* In fact, as explained above and discussed further below, there *is* a simultaneous action proceeding in the Central District of California where First Financial has prevailed on this very issue against the sales contractors themselves who are the actual parties to the Agreement's anti-raiding provision. With respect to Defendants, it is simply "not enough for a declaratory judgment plaintiff to assert…a practical interest in the outcome of a lawsuit between

other parties.  Instead, Article III requires the existence of adverse legal interests arising from a

legal claim, and that is absent from this case." *Id*.  As such, the Court finds that Defendants lack

Article III standing to bring a claim for declaratory relief.  Without citing to a single case in

support of their position, or distinguishing *Shell* in any way, Defendants utterly fail to convince

the Court otherwise. *See* Opp'n 4-5.  First Financial's motion to dismiss the First Counterclaim is

therefore GRANTED.

### b.  Leave to Amend and the Court's Discretion to Exercise Jurisdiction

Although leave to amend should generally be freely given "when justice so requires,"

certain factors can weigh against generous leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Foman v.

Davis,* 371 U.S. 178,182 (1962).  Those factors include "undue delay, bad faith or dilatory motive

on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of the amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d

1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding

whether to grant leave to amend).

Additionally, although the party invoking federal jurisdiction may generally amend the

complaint to correct a defective jurisdictional allegation, *see* 28 U.S.C. § 1653, or to prove that

jurisdiction does in fact exist, federal jurisdiction cannot be created by amendment if it does not

exist at the outset. *See* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.14[3], at 15–40,

(3d ed. 2013); *see also Morongo Band of Mission Indians v. California State Bd. of Equalization*,

858 F.2d 1376, 1380-81 (9th Cir. 1988) (if district court lacked subject matter at the outset, then

"court's various orders, including that granting leave to amend the complaint, were nullities");

*Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir. 1979) (complaint filed in state

court and removed to federal court did not state any basis for federal jurisdiction, thus there was

no jurisdiction to entertain a later amendment to the complaint).

First Financial does not address whether the First Counterclaim should be dismissed with

or without leave to amend.  Defendants request that they be granted leave to amend under Rule

15's liberal standard to correct any deficiencies. *See* Opp'n at 9.  The Court determines that leave

to amend is not warranted because even if it was legally permissible to grant Defendants' leave to amend their standing allegations, this Court would exercise its discretion and decline to exercise jurisdiction over the claim for a declaratory judgment.

In the alternative to its above standing arguments, First Financial argues that even if subject matter jurisdiction exists with respect to the First Counterclaim, the Court should decline to exercise jurisdiction over it. *See* Mot at 8. Defendants concede that they do not have an "absolute right" to a declaratory judgment, but argue that there is "no reason" why the Court should give up its jurisdiction prior to summary judgment. *See* Opp'n at 5.

The language of the Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority," *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 250 (1952) (J. Reed, concurring), and a district court is vested with the discretion to dismiss declaratory judgment actions based on prudential concerns. A motion to dismiss an otherwise appropriate suit for declaratory judgment is accordingly addressed to discretion of the court. *See Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942) (reaffirmed in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

A court, in determining whether to exercise jurisdiction over a declaratory judgment suit, may consider a number of factors: "A district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). These three primary factors, though not exclusive, are the "philosophic touchstone" of the *Brillhart /Wilton* analysis. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.,* 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998)); *see also Brillhart,* 316 U.S. at 495; *Wilton,* 515 U.S. at 282–83.[1]

The Court has considered the relevant factors and concludes that it would decline to

---

[1] Other considerations may include "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems." *Dizol,* 133 F.3d at 1225 n.5.

exercise jurisdiction over Defendants' claim for declaratory judgment under these circumstances. In the recent *Do* Order, Judge Wilson interpreted the exact same anti-raiding provision under state law and held that Section C.3.i of the Agreement does not violate § 16600. As the *Do* Order pointed out, the anti-raiding provision is similar to countless anti-raiding provisions in contracts that have been upheld by California district courts. *Do* Order at 3-5. The Court agrees with First Financial that even if Defendants were able to establish this Court's subject matter jurisdiction through amendment of the First Counterclaim, the Court should avoid a "needless determination of state law" that has already been determined by another federal judge.[2]

Thus, even if Defendants were somehow able to allege an adverse legal interest or substantial controversy sufficient to confer standing, such amendment would be futile because the Court would also dismiss the request for declaratory relief based on prudential concerns. *See Brillhart*, 316 U.S. at 495. For these reasons, First Financial's motion to dismiss the First Counterclaim for a declaratory judgment is GRANTED WITHOUT LEAVE TO AMEND.

### 2. Second Counterclaim for Violation of § 17200

The Court turns to First Financial's motion to dismiss Defendants' Second Counterclaim for a violation of California Business and Professions Code §§ 17200 *et seq. See* Answer at 16. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business practices." Cal. Bus. & Prof. Code § 17200; *see also Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). Each prong of the UCL provides a separate and distinct theory of liability. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.2007). Although it is unclear from Defendants' allegations, Defendants appear to contend that First Financial's conduct has violated the "unlawful" and "unfair" prongs based on their general allegation that First Financial has "engaged in wrongful

---

[2] Again, Defendants cite to no authority for their legal position and offer no arguments regarding the *Brillhart* factors. *See* Opp'n at 5. Defendants' argument on this point consists of two sentences urging the Court to keep their declaratory relief claim alive until summary judgment when the Court may come to a "completely different determination" from Judge Wilson. *Id.*

12

and/or unlawful acts or practices." Answer ¶ 93.

This pleading deficiency alone warrants dismissal of the Second Counterclaim. However, the Court must first determine whether Defendants have standing to bring the claim at all, which is where First Financial focuses its motion to dismiss. First Financial argues that Defendants lack standing under the UCL because they have not alleged a cognizable injury, and have also failed to plausibly allege any injury that was "caused by" acts of unfair competition. *See* Mot. at 9-10. Defendants' opposition does nothing to clarify the issue for the Court, and consists of a conclusory statement that First Financial's arguments "are simply without merit," followed by a block quotation taken from the Second Counterclaim. *See* Opp'n at 6.

In order to establish standing under the UCL, "a plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (quoting *Susilo v. Wells Fargo Bank, N.A.*, 796 F.Supp.2d 1177, 1195–96 (C.D. Cal. 2011)) The California Supreme Court has referred to these elements for standing as the "economic injury" and "caus[ation]" requirements. *See Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011) (holding that a UCL plaintiff must show a "causal connection" between the economic injury and the alleged unfair conduct). This requirement is meant to confine standing to those actually injured by a challenged business practice and "to curtail the prior practice of filing suits on behalf of clients who have not…had any other business dealing with the defendant." *Clayworth v. Pfizer, Inc.,* 49 Cal. 4th 758, 788 (2010).

### a.     Economic Injury

First Financial argues that Defendants have failed to allege sufficient facts to establish either requirement for standing under the UCL, which requires allegations that they have suffered economic injury as a result of the challenged unfair competition. *See* Cal. Bus. & Prof. § 17204; *see also Kwikset*, 51 Cal. 4th at 326. The Court agrees with First Financial that the Second Counterclaim fails to allege a cognizable economic injury under the UCL. Again, Defendants' theory under the UCL appears to be that First Financial has engaged in unfair competition against Defendants through its "relationship with FEG," by threatening First Financial's sales contractors

by withholding duly earned commissions if any contractor refuses to honor the anti-raiding provision of the Agreement. *See* Answer ¶ 93(c); *see also* Opp'n at 6. Defendants allege that First Financial has profited and benefited from such wrongful threats and intimidation. *Id.* In their prayer for relief, Defendants allege that they seek "restitutionary damages" against First Financial "including disgorgement of payments received…based on prospective sales of prospective agents, that were intimidated and unlawfully prevented from bettering their employment status." Answer at 17.

Private individuals such as Defendants are limited to pursuing remedies under the UCL for restitution and injunctive relief. *See Anthem*, 162 F.Supp.3d at 984. Defendants' "restitution" theory is fatally flawed under the UCL because Defendants do not plausibly allege that they have a cognizable ownership interest in such payments from First Financial to its sales contractors. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants.") As currently pled, the Answer and Second Counterclaim contain insufficient factual allegations that Defendants themselves, as opposed to the sales contractors or FEG, have suffered an actual injury or sustained any economic loss sufficient to confer standing under the UCL.

### b. Causation

Defendants have also failed to allege a logical causal connection between damage to them (which they have independently not alleged adequately) and First Financial's alleged unfair business practices. To survive a motion to dismiss for lack of standing under the UCL, Defendants must allege facts that link their purported injuries to the anti-raiding provision or any other challenged conduct by First Financial. Defendants' allegations do not come close to alleging the clear causal connection required by the UCL, and their opposition again adds nothing to explain the causal theory underlying their Second Counterclaim. Until Defendants can allege facts showing that they suffered economic damages *resulting from* First Financial's challenged practices, Defendants cannot proceed with a UCL claim.

For the foregoing reasons, First Financial's motion to dismiss Defendants' Second

1   Counterclaim for a violation of § 17200 is GRANTED WITH LEAVE TO AMEND. *See* Fed. R.

2   Civ. P. 15(a)(2) (leave to amend should be freely given "when justice so requires.")

3                **B.     First Financial's Motion to Strike**

4           Defendants' Answer contains ten affirmative defenses to First Financial's Complaint:

5   (1) failure to state a claim; (2) good faith; (3) business justification privilege; (4) failure to mitigate

6   damages; (5) laches; (6) no unlawful conduct under *Reeves v. Hanlon*, 33 Cal.4th 1140 (2004);

7   (7) release; (8) mootness; (9) offset; and (10) the anti-raiding provision is invalid under California

8   Business & Professions Code § 16600.  *See* Answer ¶¶ 62-75.  First Financial moves under Rule

9   12(f) to strike all ten affirmative defenses, and to strike certain allegations in the Answer asserting

10  that the anti-raiding provision is void. *See* Mot. at 10-13.

11          First Financial argues that the First through Ninth affirmative defenses are deficient on

12  several grounds including that they are not pled with the requisite specificity required under *Bell

13  Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 566 U.S. 662 (2009),

14  because some are "not a defense" or "invalid," and others are "immaterial and impertinent." *See*

15  Mot. at 10-11.  First Financial then moves to strike the Tenth affirmative defense and allegations

16  in the Answer concerning the anti-raiding provision because they are "immaterial and

17  impertinent," and should be stricken along with the Court's dismissal of the First Counterclaim for

18  a declaratory judgment that the anti-raiding provision is invalid. *Id*. at 13.

19          Defendants argue that their affirmative defenses are sufficiently pled, and request that the

20  Court grant them leave to amend to cure any deficiencies that the Court finds in its affirmative

21  defenses. Opp'n at 6-9.  The Court agrees that if an affirmative defense is stricken, leave to amend

22  should be freely given so long as First Financial is not prejudiced. *See, e.g., Wyshak,* 607 F.2d at

23  826.  For the reasons that follow, First Financial's motion to strike is GRANTED WITH LEAVE

24  TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, and DENIED IN

25  PART.

26                **1.     First Affirmative Defense**

27          Defendants' first affirmative defense states simply that the "Complaint fails to state

28  sufficient facts to constitute a cause of action against [Defendants]." Answer ¶ 62.  First Financial

argues that this is "not a defense," but is a mere denial of the Complaint's allegations and should be stricken. The Court agrees. "[D]enials of the allegations in the Complaint or allegations that the Plaintiff cannot prove the elements of his claims are not affirmative defenses." *G & G Closed Circuit Events, LLC v. Nguyen,* 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010) (citing *Solis v. Couturier,* 2009 WL 2022343, at *3 (E.D. Cal. July 8, 2009)); *see also Barnes v. AT & T Pension Benefit Plan–Nonbargained Program,* 718 F.Supp.2d 1167, 1174 (N.D. Cal. 2010) ("Failure to state a claim is not a proper affirmative defense, but, rather, asserts a defect in [Plaintiff's] prima facie case."). The Court GRANTS First Financial's motion to strike the first affirmative defense WITHOUT LEAVE TO AMEND. Because this is not actually a defense, amendment would be futile.

### 2. Second Affirmative Defense

First Financial argues that the Second affirmative defense, that Defendants acted in "good faith" and "without malice," is immaterial because it essentially asserts ignorance of the law which is not a defense to liability. *See* Mot. at 11 (citing *Joe Hand Promotions, Inc. v. Davis*, No. C 11-6166 CW, 2012 WL 4803923, at *7 (N.D. Cal. Oct. 9, 2012)). The Court is not convinced that the Second affirmative defense that Defendants acted in good faith is tantamount to an "ignorance of the law" defense. Rather, Defendants assert that they acted reasonably and without a culpable state of mind. Even if this is not a true affirmative defense, the statement should come as no surprise to First Financial, and its veracity can be borne out in discovery and at trial. Moreover, First Financial has identified no prejudice from maintaining the "good faith" language in the pleadings. Accordingly, First Financial's motion to strike the Second affirmative defense is DENIED.

### 3. Third Affirmative Defense

Defendants' third affirmative defense asserts that First Financial's recovery is barred by the "business justification privilege" which applies to claims for alleged interference with contracts. *See* Answer ¶¶ 64-65. First Financial argues that this defense is "invalid" because it lacks factual allegations regarding how Defendants are competitors of First Financial. *See* Mot. at 11. Rather than a proper means to strike matter in a pleading, this constitutes First Financial's

legal argument that Defendants cannot ultimately prove that they are entitled to claim a defense of privileged competition. The Court finds that the allegations are sufficient and First Financial has fair notice of the defense, which is easily understandable even if Defendants may not ultimately prevail on the privilege. First Financial's motion to strike the Third affirmative defense is therefore DENIED.

### 4.   Fourth Affirmative Defense

First Financial also argues that the Fourth affirmative defense that First Financial "failed to mitigate its damages" is invalid. *See* Mot. at 11. Defendants allege that when the leader of the sales contractor exodus, Gilles Moua, submitted his resignation, First Financial could have sought an unspecified "resolution of the issue" rather than precipitate the "mass defection." *See* Answer ¶ 66. The Court concludes that this affirmative defense is insufficiently pled under *Twombly* and *Iqbal*, despite Defendants' general contention that any missing facts "are supplied by the Complaint itself." *See* Opp'n at 8. Defendants fail to allege facts to show that First Financial could have avoided its injuries by taking "reasonable efforts after the wrong was committed." *Ansari v. Elec. Document Processing, Inc.*, No. 5:12-CV-01245-LHK, 2013 WL 664676, at *4 (N.D. Cal. Feb. 22, 2013) (internal citation and quotation omitted). First Financial's motion to strike the Fourth affirmative defense is therefore GRANTED WITH LEAVE TO AMEND for failure to provide the underlying factual basis for the defense.

### 5.   Fifth Affirmative Defense

Defendants' Fifth affirmative defense of laches alleges that Defendants should have been included in the case *First Financial Security v. Freedom Equity Group*, Case No. 5:15-cv-01893 (N.D. California). Defendants allege that they have been prejudiced by First Financial's delay in bringing this suit which requires Defendants to "start all over" and "relitigat[e] the same issues." *See* Answer ¶ 67. Defendants have not alleged sufficient facts to make their laches affirmative defense plausible. There are no specific facts indicating that First Financial's alleged "delay" was unreasonable. Moreover, Defendants have not factually alleged any prejudice by the delay because Defendants were not a party to First Financial's lawsuit against FEG and thus it is unclear how Defendants themselves are required to "start over" and "relitigate" issues that they never

17

litigated in the first place. Defendants do not cite to any authority or offer further argument for the proposition that their failure to be joined in the separate lawsuit against their client constitutes prejudice. *See* Opp'n at 8. The Court leaves open the possibility that Defendants may be able to cure this affirmative defense with additional factual pleadings of an unreasonable delay by First Financial or prejudice to Defendants. First Financial's motion to strike is therefore GRANTED WITH LEAVE TO AMEND as to the Fifth affirmative defense.

### 6. Sixth Affirmative Defense

Defendants rely on *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) in their Sixth affirmative defense to allege that they used "no unlawful methods." Answer ¶ 68. First Financial argues that this is not an affirmative defense because it is an attack on the sufficiency of the Complaint, and it is also insufficiently pled. The Court agrees on both fronts. Again, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002). Such an attack on the Complaint is properly addressed through a denial in the Answer or an appropriate motion.

The Sixth affirmative defense is also a barebones recitation of a legal doctrine that has no supporting facts or connection to the allegations in the Complaint. A mere reference to a legal doctrine in an affirmative defense is insufficient notice to the plaintiff. *See Qarbon.com Inc. v. eHelp Corp.,* 315 F.Supp.2d 1046, 1049 (N.D. Cal. 2004). Defendants offer no clarification or helpful argument in their opposition to explain the validity of this affirmative defense. Therefore, First Financial's motion is GRANTED and the Sixth affirmative defense will be stricken WITHOUT LEAVE TO AMEND because this is not actually a defense and amendment would be futile.

### 7. Seventh Affirmative Defense

In their Seventh affirmative defense, Defendants allege that they have been released from all liability by the Settlement Agreement entered into between First Financial and the two primary sales contractors who left First Financial. Answer ¶¶ 69-71. The Court finds that First Financial has adequate notice of this defense and the facts underlying it, as Defendants have alleged that they are covered by paragraph 2 of the Settlement Agreement due to their relationship with the

sales contractors. The Court DENIES First Financial's motion to strike this defense because First Financial is on notice of the factual basis for this defense and has failed to show that it will suffer any prejudice from leaving this defense in the Answer.

### 8. Eighth Affirmative Defense

The Eighth affirmative defense suffers from similar deficiencies to those in the Fifth affirmative defense, explained above. *See supra* at 17-18. Defendants raise a sort of "mootness" defense, alleging that all or nearly all of the factual issues, including damages, have been resolved by the case *First Financial Security v. Freedom Equity Group*, Case No. 5:15-cv-01893 (N.D. California). *See* Answer ¶ 72. Defendants admit that they were not a party to that lawsuit, but do not allege how that ongoing lawsuit against their client resolves any factual or damages issues related to First Financial's claims against Defendants. Defendants argue that their attachment of the Jury Verdict Form from the other case, where the jury found FEG to be liable for $1.2 million in damages, serves to focus the issues for First Financial and the Court. *See* Opp'n at 9. The Jury Verdict Form does nothing to explain the factual basis for Defendants' affirmative defense that the lawsuit against FEG somehow resolves all claims against Defendants. The Court GRANTS First Financial's motion to strike the Eighth affirmative defense WITH LEAVE TO AMEND.

### 9. Ninth Affirmative Defense

Defendants' Ninth affirmative defense for offset alleges that First Financial unlawfully stopped paying commissions and residuals in excess of $10 million to its lead sales contractor who left for FEG. *See* Answer ¶¶ 73-74. In conjunction with the commission and residuals withheld from other agents, Defendants allege that these amounts should be offset against any recovery by First Financial in this action. *Id.* First Financial moves to strike this affirmative defense as insufficiently pled. *See* Mot. at 13. Neither party addresses whether any of First Financial's claims permit an offset. However, Defendants have alleged a specific, even if far-fetched, amount for the offset and it is unclear what further factual allegations First Financial requires to be put on fair notice of this defense. First Financial's motion to strike the Ninth affirmative defense is therefore DENIED.

### 10. Tenth Affirmative Defense and Anti-Raiding Allegations

Finally, First Financial moves to strike the Tenth affirmative defense and various allegations in the Answer regarding the anti-raiding provision on the grounds that they are immaterial, impertinent, and redundant. *See* Mot. at 13. The Tenth affirmative defense alleges that First Financial's claims against Defendants are barred because the Agreement between First Financial and its sales contractors, including the anti-raiding provision, are invalid under California law. *See* Answer ¶ 75. Similarly, portions of fifteen (15) paragraphs in the Answer include some form of the following legal conclusion: "Answering Defendants allege that to the extent the SC Agreement contains a 'non- solicitation' provision, the SC Agreement is void, and cannot be enforced under California law, specifically California Business and Professions Code, § 16600." *Id*. ¶¶ 5, 20, 25, 36, 37, 40, 41, 43, 45, 48-51, 54, 59.

First Financial argues that the Tenth affirmative defense and related allegations regarding the invalidity of the anti-raiding provision should be stricken as they serve no purpose other than to repeat Defendants' basis for their First Counterclaim. *See* Mot. at 13. As discussed above, the Court dismisses Defendants' First Counterclaim without leave to amend for lack of standing, and because the Court would decline to exercise jurisdiction over the declaratory judgment claim even if Defendants had standing to pursue it. *See supra*, at 6-12. Defendants argue that the Tenth affirmative defense is sufficient "whether or not the First Counterclaim is dismissed." Opp'n at 9.

The Court is not convinced that the Tenth affirmative defense and related must be stricken along with the dismissal of the First Counterclaim for a declaratory judgment. However, the Court agrees that the Tenth affirmative defense is not sufficiently pled and fails to provide First Financial with fair notice of the grounds for this defense as it relates to Defendants' liability. Moreover, a mere reference to a legal doctrine in an affirmative defense, "like a reference to statutory provisions, is insufficient notice." *Qarbon.com*, 315 F.Supp.2d at 1049. First Financial's motion to strike the Tenth affirmative defense as well as the portions of the fifteen paragraphs in the Answer regarding the alleged invalidity of the Agreement is GRANTED WITH LEAVE TO AMEND.

## IV.   ORDER

For the foregoing reasons, it is hereby ORDERED that:

(1)   First Financial's motion to dismiss Defendants' First Counterclaim for a declaratory judgment is GRANTED WITHOUT LEAVE TO AMEND;

(2)   First Financial's motion to dismiss the Second Counterclaim for a violation of § 17200 is GRANTED WITH LEAVE TO AMEND;

(3)   First Financial's motion to strike is GRANTED WITH LEAVE TO AMEND IN PART, WITHOUT LEAVE TO AMEND IN PART, AND DENIED IN PART as follows:

  (i)   Defendants' First and Sixth affirmative defenses are STRICKEN WITHOUT LEAVE TO AMEND because they are not actually defenses.

  (ii)   Defendants' Fourth, Fifth, Eighth, and Tenth affirmative defenses, as well as the portions of fifteen paragraphs in the Answer regarding the alleged invalidity of the Agreement are STRICKEN WITH LEAVE TO AMEND because they are insufficiently pled but First Financial has not articulated any prejudice that would result from granting leave to amend.

  (iii)   First Financial's motion to strike Defendants' Second, Third, Seventh, and Ninth affirmative defenses is DENIED.

Defendants shall file an amended Answer and § 17200 Counterclaim with this Court **on or before December 18, 2017**.  Failure to cure the deficiencies identified above may result in the dismissal of Defendants' Counterclaim and/or striking of the affirmative defenses with prejudice.

**IT IS SO ORDERED.**

Dated:  November 28, 2017

BETH LABSON FREEMAN
United States District Judge